NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-414                                          Appeals Court

COMMONWEALTH  vs.  THERESA A. TANTILLO.

No. 22-P-414.

Plymouth.     April 7, 2023. – July 18, 2023.

Present:  Ditkoff, Hand, & D'Angelo, JJ.

Motor Vehicle, Operation. Negligence, Motor vehicle. Evidence,
     Result of illegal interrogation, Judicial notice. Doctor,
     Prescription. Controlled Substances. Search and Seizure,
     Threshold policy inquiry. Threshold Policy Inquiry.
     Practice, Criminal, Motion to suppress.

Complaint received and sworn to in the Brockton Division of the District Court Department on August 27, 2019.

A pretrial motion to suppress evidence was heard by Daniel E. Dilorati, J., and the case was heard by Jeffrey K. Clifford, J.

Kristen Friedel for the defendant.
Elizabeth A. Mello Marvel, Assistant District Attorney, for the Commonwealth.

D'ANGELO, J.  After a jury-waived trial, a District Court judge found the defendant guilty of negligent operation of a

motor vehicle, G. L. c. 90, § 24 (2) (a).[1]  The charge stemmed from a collision in which the defendant's car hit a pole in a parking lot at a Cumberland Farms store in East Bridgewater (Cumberland Farms).

Prior to trial, the defendant filed a motion to suppress statements she made to the police when she was stopped shortly after the incident, on the ground that she had been subjected to custodial interrogation without the benefit of Miranda warnings. On appeal, she argues that the judge erred in denying her motion to suppress and by taking judicial notice that all pill bottles distributed by a pharmacist would have a label affixed on them showing directions for use and cautionary statements.  She also claims that the evidence was insufficient to support her conviction.

Concluding that the defendant was not in custody when she was questioned, that there was sufficient evidence that the defendant endangered the safety of the public by driving in a

---

[1] The judge allowed a motion for a required finding of not guilty on a charge of leaving the scene of a motor vehicle accident after causing property damage, G. L. c. 90, § 24 (2) (a), and acquitted the defendant on a charge of operating a motor vehicle under the influence of drugs, G. L. c. 90, § 24 (1) (a) (1).

negligent manner, and that any error in taking judicial notice was not prejudicial, we affirm.[2]

Background. We summarize the trial facts, as the judge could have found them, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). On August 9, 2019, East Bridgewater police officers received a dispatch about an accident in the parking lot of Cumberland Farms. Some distance from Cumberland Farms, a police officer stopped a vehicle on the side of the road. The officer approached the defendant, who was the driver of the vehicle, and asked her if she hit a pole at Cumberland Farms. The defendant responded that she had hit the pole and that she was nervous, lost, and looking for directions. She stated she was on her way to her son's house. The officer observed that the defendant seemed disoriented and was speaking slowly and shakily.

When the police officer asked the defendant to get out of the vehicle, the defendant looked unsteady and held onto the car door for support. The defendant appeared to have wet spots on her dress and, responding to the officer's question, explained that she spilled something on herself before leaving the house.

---

[2] The defendant also argues that the cumulative impact of the errors created a substantial risk of a miscarriage of justice. Although a combination of errors may, in certain circumstances, present a substantial risk of a miscarriage of justice, see Commonwealth v. Cancel, 394 Mass. 567, 568 (1985), there is no such risk here for reasons we discuss below.

The officer then asked the defendant when she had left her house, to which the defendant responded "2:30," although the time of the questioning was approximately 2:05 P.M. The police officer asked the defendant if she had taken or was on any medications. The defendant responded that she had taken Tramadol and Clonazepam that day and that those medications were prescribed to her.

The defendant then performed several roadside assessments during which she was unable to follow the officer's instructions or to keep her balance. Another officer arrived at the scene and conducted additional assessments. The defendant appeared very unsteady, shaky, and had a blank look on her face. At that time there were four officers on the scene. Paramedics arrived and put the defendant on a stretcher because she was so unsteady on her feet. They subsequently transported her to the hospital. After the defendant left the area, the officers did an inventory of her vehicle, and an officer testified that they found "some prescription bottles in [the defendant's] name: Clonazepa[m], Tramadol. I think Gabapentin was the other one." No bottles, nor any pictures of the bottles, were introduced in evidence.

One of the police officers traveled from the scene of the vehicle stop to Cumberland Farms to determine if there had been any damage to the parking lot poles. He noted damage to a pole but was unable to determine whether the damage was fresh.

After the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on all three charges. The judge allowed the motion as to the charge of leaving the scene of a motor vehicle accident after causing property damage and denied the motion as to the other charges. At the close of the case, the judge found the defendant not guilty of operating a motor vehicle while under the influence of drugs and guilty of negligent operation of a motor vehicle.

Discussion. 1. Motion to suppress. When reviewing the denial of a motion to suppress, we defer to the judge's determination of "the weight and credibility to be given oral testimony presented at the motion hearing," and accept the judge's findings of fact absent clear error, but we perform an independent review of the judge's legal determinations. Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).

Certain facts were presented at the suppression hearing that were not presented at trial. The motion judge found that East Bridgewater police dispatch received a telephone call that someone had crashed into a pole outside Cumberland Farms and that the person appeared impaired. Dispatch then received a second call that a Toyota Camry, identified by its license plate number, had hit a pole and that the driver, who was identified as a blonde woman, had stumbled out of the car. Using the information from the telephone calls, a police officer located

and stopped the defendant's vehicle. The officer asked the defendant if she was involved in an "accident" at Cumberland Farms, and she responded, "[M]aybe."

The defendant asserts that she should have been provided with Miranda warnings because she was in custody at the time the officer questioned her. An interrogation is custodial if, based on an objective evaluation of the circumstances, see Commonwealth v. Larkin, 429 Mass. 426, 432 (1999), "a reasonable person in the defendant's shoes would have perceived the environment as coercive." Commonwealth v. Wardsworth, 482 Mass. 454, 481 (2019). In assessing custody,

> "the court considers several factors: (1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest."

Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001). The so-called "Groome factors," see Commonwealth v. Carnes, 457 Mass. 812, 819 (2010), are not exclusive, and the judge must consider the totality of the circumstances. See Commonwealth v. Medina, 485 Mass. 296, 301 (2020). The Supreme Judicial Court has refined this test, holding, "rather than attempting to determine whether a reasonable person would believe he or she was free to

leave, . . . the more pertinent question is whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay."  Commonwealth v. Matta, 483 Mass. 357, 362 (2019).

The questioning of the defendant took place on the street, and this weighs against a finding of custody.  See, e.g., Commonwealth v. Tejada, 484 Mass. 1, 9, cert. denied, 141 S. Ct. 441 (2020) (fact that "interrogation was in a public parking lot, not in a police station or other secluded area" weighed against determination that defendant was in custody); Vanhouton v. Commonwealth, 424 Mass. 327, 331 n.7, cert. denied, 522 U.S. 834 (1997), quoting Pennsylvania v. Bruder, 488 U.S. 9, 10 (1988) ("traffic stops commonly occur in the 'public view,' in an atmosphere far 'less police dominated' than that surrounding the kinds of interrogation at issue in Miranda itself").  Additionally, from the defendant's point of view, the officer's actions of simply stopping her car, for a presumptively temporary amount of time, did not objectively create a coercive environment.  See Commonwealth v. Ayre, 31 Mass. App. Ct. 17, 20 (1991).  The motion judge concluded, and we agree, that the place of interrogation was not coercive.

The motion judge found that "[t]he questions that [the officers] asked the defendant were incidental to general on-the-scene questioning."  Brief preliminary questions asked in an

effort to confirm or dispel suspicion of criminal activity typically do not require Miranda warnings.  See Commonwealth v. Kirwan, 448 Mass. 304, 311-312 (2007).  An open-ended preliminary question such as "What happened?" does not convey suspicion of wrongdoing.  See Commonwealth v. Callahan, 401 Mass. 627, 630 (1988).  "[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances, not on the subjective views harbored by either the interrogating officers or the person being questioned" (quotations and citations omitted).  Medina, 485 Mass. at 303.

Here, the officers investigating the defendant were aware that the car that was stopped had hit a pole at Cumberland Farms.  However, as most minor traffic collisions are not crimes, and it was unclear that the pole had suffered any damage, it had not been ascertained that any crime had occurred at the time the officer began the questioning of the defendant. The first question the officer asked was "if [the defendant] was at . . . an accident at Cumberland Farms," to which the defendant replied, "[M]aybe."  Another officer then arrived on the scene and asked the defendant "if she had hit something at Cumberland Farms," to which the defendant replied, "[Y]es." These were brief, preliminary questions asked in an effort to confirm or dispel suspicion of criminal activity for which

Miranda warnings are not required. See Kirwan, 448 Mass. at 311.

The motion judge found that the questioning was investigatory rather than accusatory. This ruling was correct. The nature of the questioning was not coercive, and the questioning never became aggressive. The questioning was investigative in nature, and the officers never conveyed to the defendant that they believed she had committed a crime. See Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 505 (2011). The initial nature of the questioning was not consistent with interrogation. The defendant did not admit that she had been involved in hitting the pole when she answered "maybe." It was only after the defendant responded affirmatively to the officer's question about whether she was involved in an "accident" that police knew that she was the driver who had hit the pole. However, there was still no definite indication that any crime had been committed because the police, at that point, had no information about whether the pole had suffered any damage, and they only suspected that the driver may have been impaired because of the information that she had stumbled out of the car.

With regard to the final factor, whether the defendant was free to end the interrogation, the officers never, "through words or conduct, objectively communicated that the officer

would use his or her police power to coerce [the defendant] to stay." Matta, 483 Mass. at 362. Contrast Commonwealth v. Coleman, 49 Mass. App. Ct. 150, 152 (2000) (defendant told if he persisted in denials he would be arrested, handcuffed, and removed in presence of aunt, but if he confessed, he would be summoned to court). The officers contacted paramedics to bring the defendant to a hospital for medical evaluation. The defendant was not formally arrested until after she was brought to the hospital, which was well after the questioning had ended.

Weighing all of the relevant facts, and cognizant that no one factor is dispositive, see Commonwealth v. Magee, 423 Mass. 381, 386 (1996), we conclude that the defendant was not in custody when the police questioned her. The motion judge properly denied the motion to suppress the defendant's statements.

2. Sufficiency of the evidence. The defendant contends that the evidence at trial was insufficient to prove beyond a reasonable doubt that she operated her motor vehicle negligently, because the lives or safety of the public were not endangered when she struck the pole in the empty parking lot. We disagree.

"In determining the validity of a claim challenging the sufficiency of the Commonwealth's evidence at trial, we review the evidence in the light most favorable to the Commonwealth to

determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Powell, 459 Mass. 572, 578-579 (2011), cert. denied, 565 U.S. 1262 (2012), quoting Latimore, 378 Mass. at 677. "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713, cert. denied, 573 U.S. 937 (2014).

To prove the defendant guilty of negligent operation of a motor vehicle, the Commonwealth must show "that the defendant (1) operated a motor vehicle, (2) upon a public way, and (3) (recklessly or) negligently so that the lives or safety of the public might be endangered" (citation omitted). Commonwealth v. Daley, 66 Mass. App. Ct. 254, 255 (2006). Only the third element is at issue here.[3]

---

[3] There is no dispute that the defendant was operating the vehicle. Nor does the defendant challenge that she was driving on a public way in the parking lot of Cumberland Farms or the street on which her car was stopped. See G. L. c. 90, § 24 (2) (a) (public way is "any way or . . . place to which the public has a right of access, or any place to which members of the public have access as invitees or licensees"). To determine whether a way is public, "we look to see if the 'physical circumstances of the way are such that members of the public may reasonably conclude that it is open for travel'" (citation omitted). Commonwealth v. Belliveau, 76 Mass. App. Ct. 830, 832-833 (2010).

General Laws c. 90, § 24 (2) (a), "only requires proof that the lives or safety of the public might be endangered, not that they were endangered." Daley, 66 Mass. App. Ct. at 256. "The question is whether the defendant's driving had the potential to cause danger to the public, not whether it actually did." Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 51 (2015). One may operate a vehicle "in such a way that would endanger the public although no other person is on the street." Commonwealth v. Constantino, 443 Mass. 521, 526-527 (2005).

Here, the defendant admitted that she was in an "accident" at Cumberland Farms by striking a pole. She was disoriented and was speaking slowly and shakily. Additionally, the defendant was unsteady on her feet, held onto the car door for support, and had consumed medication that day.[4] The evidence was sufficient to prove that the defendant's ability to control the vehicle was significantly impaired, and as a result, the lives and safety of the public might have been endangered. See, e.g., Commonwealth v. Kaplan, 97 Mass. App. Ct. 540, 543 (2020); Commonwealth v. Ross, 92 Mass. App. Ct. 377, 380 (2017); Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 923 (2004).

---

[4] The fact that the judge ultimately did not convict the defendant of operating under the influence of drugs does not preclude the consideration of such evidence in considering the negligent operation charge. See Commonwealth v. Robicheau, 421 Mass. 176, 184 (1995); Commonwealth v. Ross, 92 Mass. App. Ct. 377, 380 (2017).

3. <u>Judicial notice</u>.  Prior to presenting any evidence, the Commonwealth moved in limine, over the defendant's objection, that the trial judge take judicial notice "of certain prescription packaging requirements" for pharmacists filling prescriptions.  Specifically, the Commonwealth requested that the judge take judicial notice that G. L. c. 94C, § 21, requires that a pharmacist affix to the container in which a controlled substance is packaged "a label showing . . . directions for use and cautionary statements, if any."[5]  The Commonwealth's motion did not request that the judge take judicial notice of the portion of the statute requiring that a pharmacist filling a prescription "affix[] to the container a label showing . . . the name of the patient . . . [and] the name of the controlled substance."  G. L. c. 94C, § 21.  Thus, we do not consider whether judicial notice of that portion of the statute would have been appropriate.

The defendant argues that the judge's taking judicial notice of the statutory requirement about "cautionary statements" was prejudicial error because it would have led the judge as fact finder to infer impermissibly that ingestion of

---

[5] The Commonwealth's motion also requested that the judge take judicial notice that G. L. c. 94C, § 21, requires that pharmacists provide to patients certain information about abuse of narcotic drugs.  The judge denied that part of the motion, and so we do not consider that issue.

those drugs would have affected the defendant's driving, without any expert testimony about the effects of the drugs.[6]  We are not persuaded.

"Motions in limine concerning the introduction or exclusion of purportedly relevant evidence are properly made and considered before and during trial, in advance of the evidence being offered."  Commonwealth v. Spencer, 465 Mass. 32, 42 (2013).  See Mass. G. Evid. § 103(f) (2023).  "The purpose of a motion in limine is to prevent irrelevant, inadmissible or prejudicial matters from being admitted in evidence . . . and in granting such a motion, a judge has discretion similar to that which he has when deciding whether to admit or exclude evidence" (citation omitted).  Commonwealth v. Hood, 389 Mass. 581, 594 (1983).

"[A]ll relevant evidence is admissible unless barred by an exclusionary rule."  Commonwealth v. Vitello, 376 Mass. 426, 440 (1978).  See Mass. G. Evid. § 402 (2023).  "The relevance threshold for the admission of evidence is low" (citation omitted).  Commonwealth v. Gerhardt, 477 Mass. 775, 782 (2017).  Evidence is generally relevant where "(a) it has any tendency to

---

[6] The defendant does not argue that the judge erred in allowing the Commonwealth's other motions in limine for the judge to take judicial notice that G. L. c. 94C, § 31, defines Tramadol as a narcotic and Clonazepam as a depressant.  Thus we do not consider those issues.

make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action."  Mass. G. Evid. § 401 (2023).  "[I]t is not necessary that the evidence be conclusive of the issue. . . .  It is sufficient if the evidence constitutes a link in the chain of proof."  Commonwealth v. Lopez, 91 Mass. App. Ct. 572, 576 (2017), quoting Mass. G. Evid. § 401 note.  "Irrelevant evidence is not admissible."  Commonwealth v. Hampton, 91 Mass. App. Ct. 852, 854 (2017).  See Mass. G. Evid. § 402.  A trial judge has broad discretion in making evidentiary rulings, which we will not disturb absent an abuse of discretion or error of law.  See David v. Kelly, 100 Mass. App. Ct. 443, 447 & n.7 (2021).  To establish that a judge abused his or her discretion, a defendant must show that there was "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Trial judges must take judicial notice of all General Laws of the Commonwealth.  See, e.g., Commonwealth v. Bones, 93 Mass. App. Ct. 681, 685 (2018) ("Courts are required to take judicial notice of the General Laws of the Commonwealth, statutes, and other public acts of the Legislature").  See also Mass. G. Evid. § 202 (2023). General Laws c. 94C, § 21, states in relevant part:

"The pharmacist filling a written, electronic or oral prescription for a controlled substance shall package the controlled substance in a container, affixing to the container a label showing . . . the name of the patient, . . . the name of the controlled substance, directions for use and cautionary statements, if any, contained in such prescription or required by law" (emphasis added).

Although it was proper for the judge to take judicial notice of the statute, it was improper to take notice "that all bottles distributed by a pharmacist would have a label on them"[7] (emphasis added).

The mere fact that the statute requires a pharmacist to include a label on prescription bottles does not mean the bottles in this case had labels on them. Labels may be removed or fall off, and sometimes people combine medications in a single bottle for convenience. See Commonwealth v. Kirk, 39 Mass. App. Ct. 225, 229 (1995) ("judicial notice . . . cannot be taken of material factual issues that can only be decided by the fact finder on competent evidence"). The statute requires labels to include "directions for use and cautionary statements, if any, contained in such prescription or required by law" (emphasis added). G. L. c. 94C, § 21. However, there was no

---

[7] The Commonwealth also requested that the judge take judicial notice of the requirement in the same statute that pharmacists dispense a pamphlet for all narcotics distributions that includes information regarding abuse of that drug. However, the judge denied that request, explaining that "[w]hether it's a requirement or not, doesn't mean it happened. So, I'm a little bit troubled by that. I don't know that that pharmacist gave her directions. I don't know that."

evidence of what type of label, if any, was on the bottles found in the defendant's car or what the cautionary instructions, if any, were and how that would be relevant to the defendant's knowledge.  Therefore, although it was permissible for the judge to take judicial notice of the statute prior to trial (during the motion in limine), once the evidence had closed, the judicially noticed information had no relevance without any connection to any bottles in the car.

Defense counsel would have been entitled to have the judge strike from the evidence the judicial notice of the portion of G. L. c. 94C, § 21, about the requirement that prescription labels contain directions for use and cautionary instructions. However, because the defendant was acquitted on the charge of operating a motor vehicle under the influence of drugs, if the judge did consider the information, such consideration had no meaningful effect on the negligent operation charge.  See Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983), quoting Kotteakos v. United States, 328 U.S. 750, 764-765 (1946) ("after pondering all that happened without stripping the erroneous action from the whole, . . . the judgment was not substantially swayed by the error").  See also Duffy, 62 Mass. App. Ct. at 923 ("even if the court were to assume that the admission of the evidence . . . was error, it was obviously not

unduly prejudicial given the defendant's acquittal on the charge to which it most directly related").

Judgment affirmed.